UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RONALD GARNES and<br>DARREN MITCHELL,<br><br>Defendant. | No. 2:20-cr-239 WBS<br><br>MEMORANDUM AND ORDER RE:<br>MOTION TO SUPPRESS |

----oo0oo----

Defendant Ronald Garnes moves to suppress certain evidence obtained during the search of his home on December 15, 2020. (Docket No. 24.) Specifically, defendant Garnes claims that law enforcement violated his Fourth Amendment rights when they entered his locked bedroom while executing a search warrant to find evidence regarding his co-defendant Darren Mitchell, who was subletting two rooms in Garnes' house.

The court finds United States v. Ayers, 924 F.2d 1468 (9th Cir. 1991), to be dispositive of the issues on this motion.

In that case, the Ninth Circuit explained that "[a] search warrant for the entire premises of a single-family residence is valid, notwithstanding the fact that it was issued based on information regarding the alleged illegal activities of one of several occupants of a residence." Id. at 1480.[1]

Defendant seeks to distinguish Ayers on three grounds. First, he argues that in Ayers, the residence at issue was a single-family residence, whereas here it was not. The court disagrees. Defense counsel agrees that whether the dwelling was a single-family residence is a question of fact to be determined by the court from the evidence submitted, including the diagrams, photographs, affidavits, and declarations. Based on its review of that evidence, the court finds that the dwelling is in fact a single-family residence. While Garnes and Mitchell had locks on their bedroom doors and Garnes' music studio, all other parts of the dwelling were shared, including a common hallway, kitchen, and bathroom. Indeed, Mitchell had no way of exiting his room

---

[1] Defendant cites Rakas v. Illinois, 439 U.S. 128, 140 (1978), and United States v. Cannon, 264 F.3d 875, 879 (9th Cir. 2001), for the proposition that a "search of a guest room in a single family home which is rented or used by a third party, and, to the extent that the third party acquires a reasonable expectation of privacy, requires a warrant." (Mot. 11, Reply 7 (Docket No. 28).) This quotation from Cannon, 264 F.3d at 879, appears to be dicta which incorrectly cites to Rakas, 439 U.S. at 140. Rakas addresses searches of automobiles, not searches of homes. Moreover, Cannon addressed a search of a property where the officers entered a rental unit within a separate rear building. The unit had its own dining area and bathroom, and the court determined that it was clearly a separate dwelling for which a separate warrant was required. In contrast, the rear building in Cannon had separately accessible storage rooms which were part of the curtilage of the main house, and thus no separate warrant was required. 264 F.3d at 879-81.

2

other than entering the common hallway and leaving through a common entrance.

Further, as noted by the government, the scope of a warrant is determined by the place to be searched and/or things to be seized, and need not be tied to a particular individual. Zurcher v. Stanford Daily, 436 U.S. 547, 556 (1978). An otherwise valid warrant is not invalidated simply because other occupants not suspected of criminal activity share the residence. See Ayers, 924 F.2d at 1480 (police did not exceed scope of search warrant, which authorized a search of the entire residence, by searching a bedroom over which the target of the search warrant did not have control).

Second, defendant seeks to distinguish Ayers on the ground that in Ayers, the bedroom doors were not locked, in contrast to his bedroom door which was locked. In the court's view, this is a distinction without a difference. Many, if not most, single family homes have locks on the bedroom doors. Garnes does not cite an any authority, and the court is unaware of any, holding that any time police execute a warrant of a single-family home, they must stop their search upon encountering a locked bedroom door. As explained by the Ayers court, narcotics and related paraphernalia "can be hidden in any portion of the residence," and because "[t]he most obvious place for the police to search would be the drug dealer's bedroom . . . . any other portion of the house would be a more secure hiding place" and a search of the entire premises would not be overbroad or unreasonable. Id. at 1480.

Third, Garnes seeks to distinguish Ayers on the ground

that his name was on the lease for the property, and thus law enforcement knew or should have known that he resided at the property and should have obtained a separate warrant to search his bedroom. However, in Ayers, it appears that the defendant also was the renter or owner of the property and another party, his son, was suspected of drug trafficking and was the target of the search warrant at issue. Nevertheless, the Ayers court found that the search of the entire residence was permissible, including areas over which the son did not have common control. 924 F.2d at 1479-80. In sum, defendant Garnes' attempts to distinguish Ayers fail.

Defendant's arguments that the officers went beyond the scope of the warrant or that the warrant was overbroad are without merit. The specific rooms of the residence to be searched were not, and need not have been, identified or described in the warrant. Nor was there any need to exclude any parts of the house from the warrant. As the affidavit in support of the warrant stated, a confidential source had identified the residence as the location where he or she would meet Mitchell to purchase drugs and detailed how Mitchell had control over more than one room of the residence. (Affidavit, ¶¶ 19-22.)

Moreover, even assuming Garnes' Fourth Amendment rights were violated by the search of his room, the court would deny the motion to suppress under the good faith exception. See United States v. Leon, 468 U.S. 897, 925 (1984). Here, the warrant application was supported by ample evidence supporting both probable cause and the affiant's belief that the warrant was supported by probable cause. As defense counsel has

4

acknowledged, there is no basis to infer that the officers intentionally misstated or omitted any material facts from the affidavit. Even if the officers had known that defendant Garnes leased and lived at the subject property, there is no indication that they knew before executing the search which rooms or rooms may have been occupied exclusively by Garnes.

IT IS THEREFORE ORDERED that defendant Garnes' motion to suppress (Docket No. 24) be, and the same hereby is, DENIED.

Dated: June 22, 2021

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE